UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case Number: 20-CR-136-JFH |
| ROBERT DALE OGDEN, | |
| Defendant. | |

### ORDER

Before the Court is the Government's Notice of Intent to Offer Expert Witness [Dkt. No. 35], the Defendant's Objection to the United States' Notice of Intent to Offer Expert Witness and Request for *Daubert* Hearing [Dkt. No. 50] and the Government's Response and Objection to Defendant's Objection to United States' Notice of Intent to Offer Expert Witness and Request for *Daubert* Hearing [Dkt. No. 54].

### BACKGROUND

Defendant is charged with two counts of abusive sexual contact. Dkt. No. 2. The Government filed its Notice of Intent to offer the expert testimony of Jessica Stombaugh, M.S.W., L.C.S.W. ("Ms. Stombaugh") regarding "issues related to sexual abuse, the disclosure process in child sexual abuse cases, and child sexual abuse accommodation syndrome." Dkt. No. 35 at 1. The Defendant filed an Objection contending testimony regarding the child sexual abuse accommodation syndrome is improper, will confuse the jury and is not reliable. Dkt. No. 50. Defendant requested a *Daubert* hearing. *Id.* The Government filed a Response to Defendant's objection noting various courts have permitted experts to testify regarding the child sexual abuse accommodation syndrome and this Court should do the same. *See* Dkt. No. 54. The Court also heard argument from the parties at the pre-trial hearing held March 1, 2021.

## ANALYSIS

Federal Rule of Evidence 702 permits a qualified expert witness to testify and render an opinion when:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assur. Corp.*, 11-CV-475, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).

"First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*. 287 F.Supp.3d 1271, 1277-78 (W.D. Okla. 2018). "If so qualified, the Court must then determine whether the expert's opinion is reliable and relevant under the principles set forth in *Daubert* and *Kumho Tire*, in that it will assist the trier of fact." *Id.* at 1278. The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound methodology and sufficient facts. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

I.   **Ms. Stombaugh's Qualifications.**

The first step in the *Daubert* inquiry is to determine whether Ms. Stombaugh is qualified by knowledge, skill, experience, training or education to render an opinion. *Lippe*, 287 F.Supp.3d at 1277-78. An expert's qualifications must provide "a foundation for a witness to answer a

specific question." *Id.* at 1279 (quotation and citation omitted). An expert's qualifications must be both "(i) adequate in general, qualitative sense (i.e., knowledge, skill, experience, training or education as required by Rule 702) and (ii) specific in the matters he proposes to address as an expert." *Id.* An expert cannot provide an opinion regarding matters on which his background and training do not provide a proper foundation. *See English v. Estes Express Lines*, No. 14-CV-70, 2018 WL 1136058, at *6 (C.D. Cal. Feb. 15, 2018).

Defendant did not contend in his briefing that Ms. Stombaugh is not qualified to testify regarding the proposed subjects. The Government contends in its brief that Ms. Stombaugh is the Program Director and a Forensic Interviewer/ Mental Health Specialist at the Child Abuse Network in Tulsa, Oklahoma. Dkt. No. 35 at 1. The Government states Ms. Stombaugh has forensically interviewed over 1,200 children. *Id.* Ms. Stombaugh has also offered expert testimony in other cases. *Id.* Further, at the March 1, 2021 hearing, the Government provided a proffer concerning Ms. Stombaugh's education and qualifications. Defendant did not contest Ms. Stombaugh's qualifications.

The Court concludes, based on Ms. Stombaugh's education and experience she is qualified to testify concerning child sexual abuse.

## II. Relevant and Reliable.

After concluding Ms. Stombaugh is qualified as an expert concerning child sexual abuse, the Court must evaluate whether her opinion is reliable and relevant. *Lippe,* 287 F. Supp. 3d at 1278. Evidence or testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotations and citations omitted). "The 'touchstone' of admissibility of expert testimony

3

is its helpfulness to the trier of fact." *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002). Defendant contends Ms. Stombaugh's testimony is irrelevant and will not aid the jury. Dkt. No. 50 at 9. Defendant argues Ms. Stombaugh's proposed testimony is within the common knowledge of jurors. *Id.* at 7.

The Tenth Circuit has held that qualified experts may testify in child sexual abuse cases concerning the characteristics of sexually abused children generally and describe the characteristics that the alleged victims exhibit. *United States v. Charley*, 189 F.3d 1251, 1264 (10th Cir. 1999) (citing *United States v. Witted,* 11 F.3d 782, 785 (8th Cir. 1998)); *see also United States v. Koruh*, 210 F.3d 390 (unpublished), 2000 WL 342252, at *2 (10th Cir. 2000). Such an expert is prohibited from making a comment on the alleged victim's credibility or identifying the alleged victim as a victim of child abuse. *Charley*, 189 F.3d at 1265 (citing *United States v. Johns*, 15 F.3d 740, 743 (8th Cir. 1994)). The Tenth Circuit's blessing of such evidence in *Charley* and *Koruh* establishes that the Tenth Circuit considers such evidence to be helpful to the jury. Additionally, courts routinely conclude expert testimony regarding the characteristics of sexually abused children is not within the common knowledge of a jury and will assist the jury. *See United States v. Perrault,* No. 17-02558, 2019 WL 1318341, at *3 (D.N.M. Mar. 22, 2019) (Admitting psychologist's testimony in child sexual abuse case and finding that psychologist's knowledge and experience was "beyond the ken of the average juror" and would "help the trier of fact better understand the evidence presented."); *Reyna v. Roberts*, No. , 10-3254, 2011 WL 4809798, at *8 (D. Kan. Oct. 11, 2011) (Rejecting petitioner's argument that state trial court erred in admitting child therapist's expert testimony concerning sexual abuse. District court noted "the average juror is unfamiliar with how children respond in sexual abuse situations.")

Consistent with Tenth Circuit precedent, the Court concludes Ms. Stombaugh's testimony is relevant and will assist the jury. Most jurors are unfamiliar with matters of child sexual abuse and how victims respond. Therefore, the Court will consider whether the evidence is reliable.

In making the reliability determination, the Court must focus on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Tenth Circuit has cited four factors that district courts should apply to make a reliability determination:

> (1) Whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 593-94). *Daubert* recognizes that these factors are not a "definitive checklist." *Daubert*, 509 U.S. at 593; *Kumho Tire Co.* at 150-151. A trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152. Whether another court has accepted a methodology is relevant in determining whether expert testimony is reliable. *Attorney Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 780 (10th Cir. 2009). A witness may acquire expertise on a subject based on experience in that field. *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014).

Defendant argues Ms. Stombaugh's proposed testimony based on the principles of the child sexual abuse accommodation syndrome ("CSAAS")[1] is impermissible because such testimony is

---

[1] CSAAS originated from the work of Dr. Roland Summit. In 1983, Dr. Summit published an article in the journal of Child Abuse and Neglect titled "The Child Sexual Abuse Accommodation Syndrome." Ronald C. Summit, The Child Sexual Abuse Accommodation Syndrome, 7 J. Child Sexual Abuse 177 (1983) ("Summit I"). The purpose of Dr. Summit's paper was "to provide a vehicle for a more sensitive, more therapeutic response to legitimate victims of child sexual abuse and to invite more active, more effective clinical advocacy for the child within the family and within the systems of child protection and criminal justice." Summit I, at 179-80. Dr. Summit described CSAAS as "a common denominator of the most frequently observed" behaviors of child sexual abuse victims: secrecy; helplessness; entrapment and accommodation; delayed, conflicted

not based on sufficient facts or data and is not the product of reliable principles and methods. Dkt. No. 50 at 1. Defendant cites an array of cases wherein CSAAS testimony has been excluded [Dkt. No. 50 at 8] and the Government provides cases wherein courts have admitted CSAAS testimony [Dkt. No. 54].

The Court acknowledges courts have treated CSAAS testimony differently. Neither party cited any Tenth Circuit precedent blessing the use of CSAAS testimony and the Court is not aware of any either. "Since most sexual abuse cases are resolved in state, rather than federal court, there are few federal court opinions on the admissibility of CSAAS evidence." *Rivera v. Rivera,* No. 01-2335, 2013 WL 25772567, at *4 n.17 (D.Kan. Nov. 12, 2003). The Oklahoma Court of Criminal Appeals concluded:

> [T]his Court accepts the accommodation syndrome as reliable scientific evidence provided that such syndrome is testified to by an expert that is (1) subject to cross-examination, (2) that the expert testifies as to the basis for such testimony, (the general acceptance in the scientific community and his knowledge of the syndrome), and (3) that the expert testifies only as to the background and nature of the syndrome and does not state an opinion as to whether or not the particular child suffers from the syndrome but leaves that to the jury.

*Davenport v. State*, 806 P.3d 655, 660 (Okla. Cr. App. 1991). Based on the Court's research, since *Davenport*, Oklahoma courts have not addressed CSAAS testimony again. In contrast, more recently other state courts have questioned the appropriateness of such testimony. *See e.g., King v. Commonwealth*, 472 S.W. 3d 523, 530 (Ky. 2015) (noting the Court has ruled CSAAS is "inadmissible because no one has offered proof of its validity. [And,] [t]hat ruling is not likely to change unless proponents of the theory provide proof of relevant factors weighing on the theory's credibility."); *State v. J.L.G.,* 190 A.3d 442, 458 and 463 (N.J. 2018) ("[I]t does not appear that

---

and unconvincing disclosure; and retraction. *Id.* at 180-81. Dr. Summit described the first two categories as "preconditions" to sexual abuse, and the remaining three as "sequential contingencies" of sexual assault. *Id.* at 181.

CSAAS's five-category theory has been tested and empirically validated as a whole." "There is limited scientific support for the overall five-part syndrome known as CSAAS.").

At the March 1, 2021 hearing, the Court questioned the Government whether it was necessary for Ms. Stombaugh to rely on the CSAAS testimony as opposed to her professional experience and education. *See Frenzel v. State*, 849 P.2d 741, 747-48 (Wyo. 1993) (noting most experts testifying regarding child sexual abuse do so based on their own personal professional experience). The Court also questioned the Government concerning the four *Bitler* factors. Ultimately, based on the record before it, the Court concludes the Government has not established the reliability of CSAAS, and testimony regarding CSAAS is unnecessary and could serve to confuse the jury. Therefore, the Court will not permit Ms. Stombaugh to testify concerning CSAAS. The Court is confident Ms. Stombaugh can present her testimony based on her education and experiences.[2]

Regarding Ms. Stombaugh's reliability as an expert concerning matters of child sexual abuse generally, the Court finds Ms. Stombaugh's testimony will be sufficiently reliable. She has years of experience including 1,200 forensic interviews and relevant training. Prior to her work at the Child Abuse Network, she was a clinician treating children. The Court concludes that Ms. Stombaugh's proposed testimony satisfies the *Daubert* reliability prong.

### III.   Unfair Prejudice.

Defendant also argues Ms. Stombaugh's testimony is highly prejudicial. Dkt. No. 50 at 6. Rule 403 allows the court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

---

[2] This decision is not intended to declare that testimony concerning CSAAS is never appropriate or admissible in a child sexual abuse case.

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. With the limitations the Court has placed on Ms. Stombaugh's testimony, the Court concludes Ms. Stombaugh's testimony will not be unfairly prejudicial.

**IT IS THEREFORE ORDERED** that the Government will be permitted to present Ms. Stombaugh's expert testimony concerning issues related to child sexual abuse and the disclosure process in child sexual abuse cases. Ms. Stombaugh will not be permitted to testify regarding child sexual abuse accommodation syndrome.

**IT IS FURTHER ORDERED** that Ms. Stombaugh will only be permitted to testify concerning the characteristics of sexually abused children generally. Ms. Stombaugh will not be permitted to testify concerning the credibility of A.P., about the particular testimony of A.P. in the case or identify A.P. as a victim of child sexual abuse.

DATED this 1st day of March, 2021.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE